UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| ARK ENCOUNTER, LLC, CROSSWATER CANYON, INC., and ANSWERS IN GENESIS, INC., <br><br> PLAINTIFFS, <br><br> vs. <br><br> BOB STEWART, individually, and in his official capacity as Secretary of the Kentucky Tourism, Arts and Heritage Cabinet, and STEVEN BESHEAR, in his official capacity as Governor of the Commonwealth of Kentucky, <br><br> DEFENDANTS. | Case No. 3:15-cv-00013-GFVT <br><br> Hon. Gregory F. Van Tatenhove <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE** |

## I.  INTRODUCTION

The Motion to Intervene of Dr. Christopher M. Caldwell, Linda Allewalt, Reverend Dr. Paul D. Simmons and Phillip J. Tamplin, Jr. ("Putative Intervenors") suffers from a critical flaw that dooms Putative Intervenors' efforts to force themselves into this proceeding.  Putative Intervenors either misunderstand or have misrepresented the nature of the tourism incentives provided under the Kentucky Tourism Development Act (the "KTD Act") that Plaintiffs Ark Encounter, LLC, Crosswater Canyon, Inc. and Answers in Genesis, Inc. ("collectively Ark Encounter") have sought to receive.  The KTD Act does not rely on taxes paid by Kentucky taxpayers to provide developers of approved tourism attractions a portion of their projects' development costs.  Rather, the incentives are funded entirely from sales taxes paid by visitors to the particular attraction.  Putative Intervenors, therefore, do not have an interest to protect in this case.  None of their taxes would be used to "support" Ark Encounter, and the Motion to Intervene should be denied.

## II.     FACTS

### A.     The Tourism Development Act

As described by the Tourism, Arts and Heritage Cabinet (the "Tourism Cabinet"), the KTD Act represents "landmark legislation, the first of its kind in the nation, [which] provides a state sales tax incentive program for tourism development projects."[1]  Ark Encounter decided to locate its project in Kentucky because of the incentives available under the KTD Act, which Kentucky officials had said would be available to it.  (Verified Compl., Doc. 1, ¶¶ 54, 100)  Ark Encounter would not have built the project "but for" the incentives.  (*Id.*, ¶ 128)  Ark Encounter applied for incentives under the KTD Act as a "tourism attraction project."  Under the Act, a tourism attraction project must incur "eligible costs" (as defined in KRS 148.851(8)) in excess of $1 million; be open to the public at least 100 days per year; and attract at least 25% of its visitors from persons who live outside of Kentucky (following the third year of operation).  KRS 148.853(2).  The project also must "have a net positive fiscal impact on the Commonwealth considering, among other factors, the extent to which the proposed tourism development project will compete directly with existing tourism attractions or previously approved tourism development projects in the Commonwealth, and the amount by which increased tax revenues from the Project will exceed the incentives given to the approved Company at the maximum level of recovery of approved costs as provided in KRS 148.853."  KRS 148.855(4)(c)(1).  If a project qualifies as a tourism attraction project, it may receive, over a 10 year period, "the lesser of the total amount of the sales tax liability of the applicant and its lessees or a percentage of the eligible costs, not to exceed 25%."  KRS 148.853(3)(b).

As required by KRS 148.855, Ark Encounter's application was reviewed by the Commonwealth's consultant, Hunden Strategic Partners ("Hunden"), which provided a report (the "Hunden Report") (Doc. No. 15-21) concluding the project would meet "all criteria identified by the

---

[1] Attached as Exhibit 1, and available at http://www.ced.ky.gov/kyedc/pdfs/KTDASummary.doc.

Kentucky Tourism and Development Act." *Id*., p. 13. The Hunden Report also noted: "The Project is expected to have a net positive impact on Kentucky, after subtracting out expected KTDA rebates." *Id.*, p. 8. Among other things, Hunden estimated the project would result in a net **increase** in Kentucky state tax revenues of $15.9 million to $29.6 million, over and above the maximum incentives that could be received by Ark Encounter. *Id.*, p. 10.[2]

The KTD Act is unique because the incentive is based on the sales taxes imposed "on the sales generated by or arising at the tourism development project." KRS 139.536(2)(a). If Ark Encounter does not generate any sales taxes, then it will not receive any reimbursement under the KTD Act. KRS 148.853(3)(b)1.b. The Tourism Cabinet's description of the Act confirms that no taxpayer funds will be used to pay for the incentives: "On an annual basis the Kentucky Department of Revenue will return to developers of approved projects the state sales tax **paid by visitors to the attraction on admission tickets, food and gift sales and lodging costs.**" (See Exhibit 1) (emphasis added)  As explained by the Director of Communications for the Tourism Cabinet in response to questions related to the initial approval of the Ark Encounter for tourism incentives:

> The program provides for the refund of a portion of the sales tax generated on site by the development. All other on site tax revenue and all off site tax revenue will remain with the Commonwealth. The incentive is performance based to the extent the applicant must generate on site sales tax in order to benefit. If they fall short of their revenue projections, the incentive is reduced accordingly. No up front funding is provided by the state.[3]

### B.   Putative Intervenors' Alleged Interests In Intervening

Putative Intervenors describe themselves as "four Kentucky taxpayers who oppose the use of their tax dollars to promote a religious ministry." (*See* Memo. in Support of Mtn. to Intervene, p. 7

---

[2] The Hunden Report also refers to potential spending on an interstate interchange near Ark Encounter. That highway project was not tied to Ark Encounter's application for incentives, and has not been approved. Nevertheless, inclusion of the cost of that project would still result in a net positive fiscal impact.
[3] See Exhibit 2, email from Gil Lawson, dated June 6, 2011.

(hereinafter "Intervenors' Memorandum")).  "Each intervenor pays taxes, including sales and income taxes, to the Commonwealth." *Id.*  "[E]ach believes that `[t]he tax rebates sought for Ark Encounter would effectively compel [him or her], as a Kentucky taxpayer, to subsidize a religious ministry against [his or her] will." *Id.*  Putative Intervenors contend they should be permitted to intervene "in order to protect Intervenors' individually enforceable right, under the Kentucky Constitution, to ensure that their tax dollars are not used to fund a religious ministry." *Id.,* p. 11.

Putative Intervenors' "belief" that they would be compelled to support Ark Encounter if it prevails in this action is erroneous.  The plain language in the KTD Act, as well as the Tourism Cabinet's descriptions of the Act, confirm that the incentives paid to Ark Encounter will be funded by the visitors to the Ark project through their purchase of admission tickets, food, gifts and other items.

### III.   ARGUMENT

Ark Encounter agrees with Putative Intervenors' list of the factors to be considered in ruling upon the Motion to Intervene under Rule 24(a) and Rule 24(b).  To intervene under Rule 24(a), Putative Intervenors must establish that:

1. The motion to intervene is timely;

2. The Putative Intervenors have a significant legal interest in the subject matter of this action;

3. The disposition of the action may impair or impede the Putative Intervenors' ability to protect their legal interests; and

4. The parties to the litigation will not adequately protect the Putative Intervenors' interests.

*Jansen v. Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

While a potential intervenor does not need to meet the same standing requirements necessary to initiate a lawsuit, *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999), this does not mean that

"any articulated interests will do." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (citations omitted). Putative Intervenors "must show a "direct, significant legally protectable interest" in the subject matter of this action. *United States v. Detroit International Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993); *United Financial Casualty Insurance Co. v. Wells*, No. 5:11-397-KKC, 2012 WL 6004150, * 1 (E.D. Ky. Nov. 30, 2012).

Under Rule 24(b), permissive intervention is only appropriate if the Putative Intervenors have a claim or defense that shares a common question of law or fact with the subject of this case and the intervention will not unduly delay or prejudice the adjudication of the litigants' rights. *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 760 (6th Cir. 2013).

> The words "claims or defenses" in this context manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit…. [P]ermissive intervention "plainly … require[s] an interest sufficient to support a legal claim or defense which is "founded upon [that] interest" and which satisfies the Rule's commonality requirement.
>
> *Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (*quoting SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)).

Putative Intervenors cannot permissively intervene unless they establish that they have a "legally protectable interest" that shares a common question of law or fact with the subject of this case. *Karst Environmental Education & Protection, Inc. v. Federal Highway Administration*, No. 1:10-CV-00154-R, 2011 WL 1434608, * 9 (W.D. Ky. Apr. 14, 2011).

Putative Intervenors do not have a "significant legal interest" or a "claim" that will be impacted by this Court's consideration of Ark Encounter's claims in this lawsuit. As noted above, if this Court determines that Ark Encounter is entitled to seek incentives under the KTD Act, those incentives will be funded entirely from sales taxes paid by persons who visit the Ark Encounter project. Putative Intervenors' "tax dollars" will not be used to fund the incentives in the event that Ark Encounter prevails in this action. In fact, construction of the project will benefit Kentucky

taxpayers because the project will have a "net positive impact" on Kentucky tax revenues. Under no circumstances would the Putative Intervenors be at risk of funding a religious ministry.[4]

In this regard, the sales tax rebate under the KTD Act is analogous to the tax credits that were the subject of *Arizona Christian School v. Winn*, 131 S.Ct. 1436 (2011). In *Winn*, the Supreme Court held that taxpayers lacked standing to pursue a challenge under the Establishment Clause against an Arizona statute that provided tax credits for contributions to school tuition organizations ("STOs"). The STOs used the contributions to provide scholarships to students that attended private schools, many of which were religious. While *Winn* involved taxpayer standing, one of the factors applied in *Winn* is the same as the requirement that the Putative Intervenors must show they have a "legally protectable interest" under Rule 24(a) or a "claim" under Rule 24(b). Generally speaking, a federal taxpayer does not have a sufficient legal interest to confer standing to challenge the constitutionality of a government expenditure of funds. *Hein v. Freedom for Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007) (plurality opinion). However, an exception exists for taxpayers who challenge a federal statute allowing the expenditure of federal funds alleged to violate the Establishment Clause. *Flast v. Cohen*, 392 U.S. 83, 85-86 (1986). The taxpayers must establish a "logical link" between the plaintiff's taxpayer status "and the type of legislative enactment attacked." *Id.*, at 102. In *Flast*, that condition was satisfied by allegations that the federal government had violated the Establishment Clause by collecting and spending tax dollars to support the purchase of textbooks and other instructional materials for use in religious schools. *Id.*, at 103. The second condition, which is the factor that is pertinent to the motion to intervene here, is that there must be a "nexus" between the plaintiff's taxpayer status and "the precise nature of the constitutional infringement alleged." *Id.*, at

---

[4] Because Putative Intervenors do not have a "significant legal interest" in the subject matter of this action, it necessarily follows that they do not satisfy the third requirement of Rule 24(a) because the disposition of this action will not impair or impede the Putative Intervenors' ability to protect any legal interest. In addition, Defendants will adequately protect any conceivable interest that Putative Intervenors could have in this matter.

102. The taxpayer in *Flast* satisfied this requirement by alleging that government funds had been spent on an outlay for religion in violation of the Establishment Clause. *Id*., at 85-86.

In *Winn*, the Supreme Court held that the taxpayers lacked standing under *Flast* to challenge the tax credits because the taxpayers funds were not being extracted or spent under the challenged statute. 131 S.Ct. at 1446-47. The Court in *Winn* observed:

> When Arizona taxpayers choose to contribute to STOs, they spend their own money, not money the State has collected from respondents or other taxpayers. Arizona's [STO statute] does not "extrac[t] and spen[d]" a conscientious dissenter's funds in service of an establishment, or "'force a citizen to contribute three pence only of his property'" to a sectarian organization. On the contrary, respondents and other Arizona taxpayers remain free to pay their own tax bills, without contributing to an STO.

131 S.Ct. at 1447 (citations omitted).

The incentives provided under the KTD Act impose even less of a burden upon state taxpayers than the STO tax credits involved in *Winn*. A tax credit reduces the state's overall tax collections. However, the KTD Act incentives are based directly upon the sales taxes generated at the project. Those sales taxes would not be paid by visitors to the Ark Encounter, but for the construction of the project, and the project would not have been located in Kentucky, but for the availability of the incentives. In addition, the Ark Encounter project will generate millions of dollars in state sales and income taxes in excess of the maximum incentives that might be paid. There is no nexus between payment of the incentives to Ark Encounter and the Putative Intervenors' taxpayer status, because none of the Putative Intervenors' taxes will be used to fund the incentives. Construction of the Ark Encounter project in Kentucky will increase the State's net tax revenues by millions of dollars.

While *Winn* involved federal standing, its conclusion is consistent with Kentucky law, including the Kentucky cases cited by the Putative Intervenors, who contend that they "have a legal interest in preventing violations of the Kentucky Constitution `directly related to the generation or

expenditure of state funds.'"  (*See* Intervenors' Memorandum, p. 11, *quoting Yeoman v. Commonwealth*, 983 S.W.2d 459, 473 (Ky. 1998).  In Kentucky, a party challenging the constitutionality of a statute must have standing to sue.  *Associated Industries of Kentucky v. Commonwealth*, 912 S.W.2d 947, 951 (Ky. 1995).

> In order to have standing in a lawsuit "a party must have a judicially recognizable interest in the subject matter of the subject."  The interest of a plaintiff must be a present or substantial interest as distinguished from a mere expectancy.  The issue of standing must be decided on the facts of each case.  **Simply because a plaintiff may be a citizen and a taxpayer is not in and of itself sufficient basis to assert standing.**  There must be a showing of a direct interest resulting from the ordinance.
>
> *City of Ashland v. Ashland F.O.P. No 3., Inc.*, 888 S.W.2d 667, 668 (Ky. 1994) (citations omitted) (emphasis added).

"Before one seeks to strike down a state statute he must show that the alleged unconstitutional feature injures him."  *Second Street Properties, Inc. v. Fiscal Court of Jefferson County*, 445 S.W.2d 709, 716 (Ky. 1969).

> It is an elementary principle that constitutionality of a law or its application is not open to challenge by a person or persons whose rights are not injured or jeopardized thereby.
>
> *Merrick v. Smith*, 347 S.W.2d 537, 538 (Ky. 1961).

All of the Kentucky cases cited by the Putative Intervenors recognize that taxpayers have a right to challenge an allegedly unconstitutional expenditure when they are injured "by the alleged illegal expenditure of **their** taxes."  *Price v. Commonwealth*, 945 S.W.2d 429, 433 (Ky. App. 1996) (emphasis added).  *See Fiscal Court of Jefferson County v. Brady*, 885 S.W.2d 681, 682 (Ky. 1994) (challenging direct payments to privately-owned schools); *Rawlings v. Butler*, 290 S.W.2d 801, 802 (Ky. 1956) (challenging expenditure of public tax money to pay salaries of nuns to teach in public schools); *Williams v. Board of Trustees of Stanton Common School Dist.*, 173 Ky. 708, 191 S.W. 507

(1917) (challenging school district's lease of church's school building to provide public education).[5]

Unlike those cases, none of the taxes paid by the Putative Intervenors would be used to pay for incentives to Ark Encounter, because those incentives will be funded solely by taxes paid on purchases made by people who voluntarily patronize the Ark Encounter project. Putative Intervenors will suffer no injury if a portion of the sales taxes generated by the Ark Encounter project are used to offset a portion of the project's development costs.

## IV. CONCLUSION

Putative Intervenors' taxes have never been used to pay for incentives provided under the KTD Act to developers of other tourism attraction projects, and would not be used to pay for incentives provided to Ark Encounter in the event that Ark Encounter prevails in this action. Those incentives are funded solely by sales taxes generated on site by visitors to the project. Therefore, Putative Intervenors' motion to intervene should be denied.

Respectfully submitted,

  /s/ Nathan W. Kellum
Nathan W. Kellum
TN Bar No. 13482; MS Bar No. 8813
Center for Religious Expression
699 Oakleaf Office Lane, Ste. 107
Memphis, TN 38117
(901) 684-5485 – Telephone
(901) 684-5499 – Fax
Email: nkellum@crelaw.org

  /s/ J. Michael Johnson
J. Michael Johnson
LA Bar No. 26059
Freedom Guard, Inc.
2250 Hospital Drive, Suite 248
Bossier City, LA 71111
(318) 658-9456 - Telephone
(318) 658-9605 - Fax
Email: mjohnsonlegal@gmail.com

   *Admitted in this matter *pro hac vice*.

---

[5] Putative Intervenors also cite *Ashland v. Calvary Protestant Episcopal Church of Ashland*, 278 S.W.2d 708 (Ky. 1955), and *Commonwealth v. Thomas*, 119 Ky. 208, 83 S.W. 572 (1904). Neither of those cases involved a taxpayer challenge to a government expenditure, and both cases involved Section 170 of the Kentucky Constitution which provides an exemption from taxation for places used for religious worship. Neither the Defendants nor the Putative Intervenors contend that providing tourism incentives to Ark Encounter would violate Section 170. Regardless, unlike an exemption, the tourism sales tax credits will not increase the tax burdens of other taxpayers because the credits will be funded solely from the incremental tax revenues created by the Project.

/s/ Robert B. Craig
Taft Stettinius & Hollister LLP
1717 Dixie Highway, Suite 910
Covington, Kentucky  41011
(859) 547-4300 - Telephone
(513) 381-6613 -  Fax
craigr@taftlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been filed this 11th day of May, 2015 using the Court's ecf system and will be served upon counsel for the parties.

/s/   Robert B. Craig