UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ARK ENCOUNTER, LLC,<br>CROSSWATER CANYON, INC.,<br>and ANSWERS IN GENESIS, INC., | )<br>)<br>) | |
| | ) | Civ. No: 15-13-GFVT |
| Plaintiffs, | )<br>) | |
| V. | )<br>) | |
| | ) | **MEMORANDUM OPINION** |
| BOB STEWART, individually, and in his | ) | **&** |
| official capacity as Secretary of the | ) | **ORDER** |
| Kentucky Tourism, Arts and Heritage | ) | |
| Cabinet, and STEVEN BESHEAR, in his | ) | |
| official capacity as Governor of the | ) | |
| Commonwealth of Kentucky, | ) | |
| | )<br>) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Ark Encounter, LLC is a limited liability company whose sole purpose "is to manage a multi-acre, paid-admission complex consisting of buildings, exhibits and other amenities… centered on factually presenting the historical truth of Noah and the Ark, the Genesis Flood, and other historical accounts recorded in the Bible." [R. 1 at ¶ 11.] The sole member of Ark Encounter is Plaintiff Crosswater Canyon, Inc., a 501(c)(3) religious non-profit whose purpose is to support the ministry of Answers in Genesis. [R. 1 at ¶ 12.] Plaintiff Answers in Genesis, Inc., (AiG) is a "Christian non-profit ministry endeavoring to proclaim the absolute truth and authority of the Bible." [R. 1 at ¶¶ 13, 16.] Together, these Plaintiffs (collectively referred to as "Ark Encounter") now sue Defendants (collectively referred to as "the Commonwealth") for excluding them from participation in a tourism incentives program created under the Kentucky Tourism Development Act (KTDA), KRS 148.850, *et. seq*.

Four Kentucky taxpayers seek to intervene as Defendants.  Like many taxpayers these four have an interest in the resolution of this case.  But, as explained below, that generalized interest is not sufficient to support intervention.  Consequently, the Kentucky taxpayers' motion to intervene will be DENIED.

**I**

For almost five years, Ark Encounter has been in conversations with the Commonwealth about receiving state tax incentives to support the construction of a full-size replica of Noah's ark.  [R. 1 at ¶¶ 84, 197.]  From its inception, Ark Encounter has "envisioned a replica of Noah's Ark made out of wood and set to full-scale dimensions − as specifically described in the book of Genesis − that would be a sign to the world that the Bible is true and that its message of salvation is to be heeded."  [R. 1 at ¶ 32.]  Instead of housing animals, Ark Encounter anticipates hundreds of thousands of people from all around America will visit the Ark every year.  [R. 1 at ¶ 76.]

In December 2014, after years of promising negotiations, the Commonwealth confirmed that it would "take no further action on Ark Encounter's application [for tax incentives]."[1]  [R. 1 at ¶ 197.]  Ark Encounter now sues the Commonwealth for excluding them from participating in this tourism incentive program.  [R. 1.]

Dr. Christopher M. Caldwell, Linda Allewalt, Reverend Dr. Paul D. Simmons, and Phillip J. Tamplin, Jr. now seek to intervene as Defendants in this action.  [R. 19.]  They portray themselves as "four Kentucky taxpayers who oppose the use of their tax dollars to promote a religious ministry" and claim that the Kentucky Constitution gives them a "specifically enforceable legal interest in preventing the use of their tax dollars" in that way.  [*Id*. at 1, 7.] They contend that the tax rebates at issue in this case would "effectively compel" each of them

---

[1]    While the Commonwealth's reasons for denying the application are central to resolving many of the dispositive issues in this case, they are not relevant to the question of whether intervention is appropriate.

"as a Kentucky taxpayer, to subsidize a religious ministry against [their] will," and they wish to intervene in order "to protect their rights, granted by the Kentucky Constitution." [*Id*. at 7-8.]

## II

## A

Federal Rule of Civil Procedure 24(a)(2) provides that a non-party may intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The parties agree that the standard within the Sixth Circuit for determining whether intervention as a matter of right is proper was correctly enunciated in *Jansen v. City of Cincinnati*:

> …the proposed intervenors [must] demonstrate that the following four criteria have been met: (1) the motion to intervene is timely; (2) the proposed intervenors have a significant legal interest in the subject matter of the pending litigation; (3) the disposition of the action may impair or impede the proposed intervenors' ability to protect their legal interest; and (4) the parties to the litigation cannot adequately protect the proposed intervenors' interest.

904 F.2d 336, 340 (6th Cir. 1990) (citing *Triax Co. v. TRW, Inc.,* 724 F.2d 1224, 1227 (6th Cir. 1984); *see also Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999); Fed. R. Civ. P. 24(a). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

1

First, there is no question that the proposed intervenors' motion is timely. It was filed only one business day after the Commonwealth responded to Ark Encounters' complaint with the filing of their Motion to Dismiss. Ark Encounter does not dispute this point.

2

Second, the proposed intervenors must demonstrate that they have a "significant legal interest in the subject matter of the pending litigation." *Jansen,* 904 F.2d at 340.  Although the Sixth Circuit "subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention of right," *Grutter*, 188 F.3d at 398 (citation omitted), this "does not mean that any articulated interest will do." *Coal. To Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (citations omitted); *see also Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) ("[T]his does not mean that Rule 24 poses no barrier to intervention at all.").  To the contrary, the proposed intervenors must show "a direct, significant legally protectable interest" in the subject matter of the litigation, *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993), sufficient "to make it a real party in interest in the transaction which is the subject of the proceeding." *Providence Baptist Church v. Hillandale Committee, Ltd*., 425 F.3d 309, 317 (6th Cir. 2005) (citation omitted).  Thus, the "inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

Here, the putative intervenors claim that, as Kentucky taxpayers, their interest is "in preventing the diversion of their tax dollars to a religious ministry" – an interest deriving from Section 5 of the Kentucky Constitution, which provides in relevant part that:

> No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity; nor shall any person be compelled to attend any place of worship, to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion…

Ky. Const. § 5. [R. 19-1 at 8, 10-12.]  The proposed intervenors contend that their interest in protecting this "individually enforceable right under the Kentucky Constitution" is sufficient to satisfy the standard for intervention as of right.  [*Id*. at 10-11.]

As the briefing makes clear, however, to answer the question of whether the proposed intervenors have a "significant legal interest" based on the appropriate interpretation of the Kentucky Constitution, the Court would be required to prematurely delve into the substantive issues upon which the ultimate resolution of this case turns.  For instance, Ark Encounter argues that the intervenors cannot have a "significant legal interest" in this case because incentives under the KTDA "will be funded entirely from sales taxes paid by persons who visit the Ark Encounter Project," and thus the only revenues involved will come from people who "voluntarily patronize" the project rather than from taxpayers generally.  [R. 31 at 5, 9.]  The putative intervenors disagree, contending that they directly contribute tax dollars which would be used to fund the Ark Encounter project because the sales taxes collected will be combined into the larger pool of public funds that is "collected from all taxpayers, including Intervenors."  [R. 39 at 3.] The Commonwealth does not take a position on whether intervention is appropriate, but acknowledges that the proposed intervenors' position is "consistent with [its] previous arguments [that] taxpayers would be supporting the Ark if it received a tax rebate because the incentives [are] a refund of taxes already remitted to the public coffers."  [R. 33 at 2.]

Fortunately for the Court, at this stage in the proceedings, these issues need not be definitively resolved in order to determine whether intervention is appropriate.  *See Horrigan v. Thompson*, 145 F.3d 1331 (6th Cir. 1998).  Instead, and putting aside for now the precise question of whether the funds at issue are "commingled" with taxes paid by other Kentucky residents, the Court finds that the more problematic part of this analysis is that the "significant legal interest" alleged by the proposed intervenors is directly rooted in their status as Kentucky taxpayers.  They specifically describe their legal interest in this case as "preventing the use of their tax dollars" in a manner which they believe violates the Kentucky Constitution.  [R. 19-1 at

1.]  Certainly under both federal law and Kentucky law, taxpayer standing is construed very narrowly.  *See, e.g., Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 1442-44 (2011) (explaining the long-standing general rule that "standing cannot be based on a plaintiff's mere status as a taxpayer); *City of Ashland v. Ashland F.O.P. No. 3, Inc.*, 888 S.W.2d 667, 668 (Ky. 1994) ("Simply because a plaintiff may be a citizen and a taxpayer is not in and of itself sufficient basis to assert standing.").  The Court recognizes, as do all the parties, that in the Sixth Circuit an "intervenor need not have the same standing necessary to initiate a lawsuit." *Grutter*, 188 F.3d at 398; *Purnell v. Akron*, 925 F.2d 941, 948 (6th Cir. 1991).  However, if any taxpayer's generalized concern about the use of their tax dollars is insufficient to bring a suit but is considered substantial and direct enough to intervene in other suits, what is to prevent all Kentucky taxpayers from intervening in a suit such as this one?  Surely, the "substantial legal interest" must be based on a more direct link with the subject of litigation.

Citing to *Purnell v. Akron*, 925 F.2d 941, as support, the proposed intervenors further contend that "[t]he need to preserve state law claims is sufficient to support intervention under Rule 24(a)" because such need constitutes "a sufficient interest" for intervention.  [R. 19-1 at 11.]  The Court is not persuaded, however, that the reasoning in *Purnell* is applicable to the circumstances presented here because the legal interest advanced by the proposed intervenors in that case focused on the enforcement of Ohio state laws governing the establishment of paternity. The court in *Purnell* noted that although a "direct, substantial interest" in the litigation that is "significantly protectable" is required, none of those terms are well defined.  *Purnell*, 925 F.2d at 947.  The court then determined the proposed interest was sufficient based on state law surrounding paternity issues in a wrongful death action, but ultimately concluded that the proposed intervenors claimed "a sufficient interest to justify holding the motion for intervention

in abeyance until the paternity issue is resolved." *Id.* at 954. With such a fact-specific scenario so different from the one presented here, the Court cannot find that *Purnell* supports the putative intervenors' argument concerning their substantial interest.

As noted above, the inquiry into whether the interest advanced is sufficiently substantial for intervention is very fact-specific, *Miller*, 103 F.3d at 1245, but the proposed intervenors have not provided support for their contention that their generalized interest in how their tax dollars are used is sufficient to allow them to intervene as of right within the specific facts of this particular case. The only other federal case law cited in support by the proposed intervenors also does not apply to the factual situation presented here. Putative intervenors cite to *Locke v. Davey*, 540 U.S. 712, 722 (2004) when arguing that state law "antiestablishment interests are paramount" when taxpayers would be compelled to support a religious ministry, but the context of that case focuses on the *state's* interest when applying strict scrutiny review concerning the Establishment Clause and says nothing at all about the interests of a proposed intervenor or of a taxpayer. Additionally, the other Sixth Circuit case cited by proposed intervenors actually undermines their argument. In *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007), the Sixth Circuit affirmed the district court's denial of an organization's motion to intervene, explaining that although the organization had advocated for and been involved in the passage of a particular law, that organization's subsequent interest in challenging the enforcement of the law was not substantial or direct enough to warrant intervention as of right. *Id.* at 782 ("Where. . . an organization has only a general ideological interest in the lawsuit – like seeing that the government zealously enforces some piece of legislation that the organization supports – and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed

7

substantial."); *see also Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007) (finding that an organization's general interest in enforcing a statute is not a sufficiently substantial legal interest for intervention unless the statute also specifically regulates the organization). If an organization that advocated for the passage of a specific law does not have a sufficient interest in its subsequent enforcement to justify intervention, then how can four Kentucky residents' interest in enforcing Kentucky law be deemed more substantial or more direct? Here, the putative intervenors are not even members of a particular organization but are simply individual taxpayer residents interested in the "zealous" enforcement of Section 5 of the Kentucky Constitution in the manner they deem appropriate.

Thus, although proposed intervenors assert the contrary, they have not demonstrated how they have more than a general interest in the enforcement of a state constitutional provision which could easily be shared by all Kentucky residents, nor have they presented facts that would distinguish their interest from that of Kentucky taxpayers at large. The proposed intervenors primarily base the substantiality of their interest on their assertions that Kentucky law "gives taxpayers an active role in policing unlawful government aid to religious ministries," but they do not define how such law or such "active role" involves intervention in a federal lawsuit. [R. 19-1 at 13.] As noted above, the Sixth Circuit has adopted "a rather expansive notion" of how substantial the interest must be to satisfy this second factor, *Miller*, 103 F.3d at 1245. However, the Sixth Circuit has also acknowledged that there must be some types of limitations on the legal interest required for intervention. *See, e.g.*, *Northland Family Planning Clinic, Inc.*, 487 F.3d at 346 (expressing concern that "[w]ithout these sorts of limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process."). Under the particular facts of the situation at hand, the Court is similarly

concerned that the judicial process and the role of intervention could be abused apart from allowing intervention as of right based on a stated legal interest that appears so general and attenuated.

The Court is well aware of the general rule in the Sixth Circuit that the same standing under Article III is not generally required for intervention. *See Grutter*, 188 F.3d at 398; *Miller*, 103 F.3d at 1245. However, the few cases developing that rule have not addressed the specific context in which the primary interest asserted by the proposed intervenors is based solely on their status as taxpayers or as residents of a state seeking to enforce part of the state's constitution. *See, e.g.*, *Grutter*, 188 F.3d at 397 (intervenors were a group of African-American and Latino/a individuals who applied or intended to apply to the University of Michigan and claimed that resolution of the case would threaten their access); *Miller*, 103 F.3d at 1243 (proposed intervenor was Michigan Chamber of Commerce which was a non-profit corporation comprised of over 6,000 other corporations concerned about a Michigan law's impact on labor unions); *Purnell*, 925 F.2d 948 (intervenors were alleged children seeking to establish paternity in a wrongful death suit); *Jansen*, 904 F.2d at 341-42 (intervenors were parties to a consent decree challenged in the lawsuit). Although several Sixth Circuit cases state that it follows a permissive approach to intervention, very few ever explain the reasoning behind it, and none have applied it to the exact factual circumstances of the case at hand. The parties also have not provided any Sixth Circuit precedent applying this lenient standard for intervention to a situation which could potentially allow all taxpayers in a state to intervene in a lawsuit.

By contrast, in the context of Article III standing, asserting standing based on taxpayer status is construed very narrowly. The United States Supreme Court has expressed great concern over opening the federal courts to all taxpayers based on their general views over how their tax

dollars are used.  *See, e.g., Winn*, 563 U.S. at 1442-43 ("Absent special circumstances, however, standing cannot be based on a plaintiff's mere status as a taxpayer.  This Court has rejected the general proposition that an individual who has paid taxes has a continuing, legally cognizable interest in ensuring that those funds are not used by the Government in a way that violates the Constitution. . . .  This precept has been referred to as the rule against taxpayer standing.") (citations omitted); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 477 (1982) (noting "that the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer"); *Americans United for Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 227 (1974) ("The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries.").

Several other circuits such as the D.C. Circuit, the Eighth Circuit, the Seventh Circuit, and the Eleventh Circuit require proposed intervenors to demonstrate Article III standing or something close to it before allowing intervention as of right.  *See, e.g., Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) (explaining that a party seeking to intervene as of right must also demonstrate Article III standing); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."); *Mausolf v. Babbitt*, 85 F.3d 1295, 1299-1300 (8th Cir. 1996) (adopting the approach "that the Constitution requires that proposed intervenors have Article III standing to litigate their claims in federal court."); *Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) (requiring proposed intervenor to demonstrate a "direct, significant and legally protectable interest" in the property at issue that is "so direct that the applicant would have a right to

maintain a claim for the relief sought") (citation omitted); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (noting that although Article III standing is not required for intervention it is "relevant" to identifying the necessary interest).

Although the Sixth Circuit does not automatically require this high of a standard, the caselaw within the Sixth Circuit referencing the more permissive standard has so far not addressed the precise question before the Court in this instance – that of allowing intervention on the sole basis that the proposed intervenors are Kentucky taxpayers who believe their tax dollars are being used in an unconstitutional manner. In such a narrow instance, the Court is deeply concerned that too permissive a standard for intervention would allow any Kentucky taxpayer to intervene in nearly any suit involving the administration of the state's tax laws. This could open the floodgates of litigation, delaying cases and hindering judicial economy. In this case alone, if the Court allows the proposed intervenors to intervene, what would have prevented any other Kentucky taxpayer from seeking intervention in this same suit? On what basis could the Court prevent any number of other taxpayers from also seeking to become part of this particular lawsuit?

Therefore, although there is no clear requirement that Article III standing be established in the context of intervention within the Sixth Circuit, the Court is reluctant to apply the usual permissive approach in these narrow circumstances. Because of the specific concerns in this particular case, and without more specific guidance from the Sixth Circuit, the Court has found some helpful insight from the other circuits mentioned above, as well as from Supreme Court precedent. For instance, the Eleventh Circuit has explained that in the context of "public law" cases involving governmental bodies charged with compliance with the law, those government bodies can be the only defendants, and parties who wish to intervene in order to protect their

11

constitutional rights which they allege would be violated have not demonstrated a sufficiently direct and substantial interest. *Keith*, 764 F.2d at 1269. Similarly, "[a]n interest shared generally with the public at large in the proper application of the Constitution and laws" is not sufficient enough for intervention because "[f]ederal courts, bound by Article III, are 'not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution.'" *Dillard v. Chilton County Com'n*, 495 F.3d 1324, 1331 (11th Cir. 2007) (quoting *Hein v. Freedom From Religion Found., Inc*., 551 U.S. 587 (2007)).

Because federal courts have limited jurisdiction, they must be particularly careful to exercise that jurisdiction within its proper limits. The federal courts do not have "an unconditioned authority to determine the constitutionality of legislative or executive acts," and therefore can only adjudicate cases in which there is a "real, earnest and vital controversy." *Valley Forge Christian College*, 453 U.S. at 758 (citation omitted). Otherwise, the judicial process could be converted "into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Id*. (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)) (internal quotation marks omitted). Indeed, "[t]his Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Id*. at 482-83 (citation omitted). Indeed, even when a party has established standing under Article III, federal courts have "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Id*. at 474-75 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Accordingly, in light of the prudential considerations of the limits of federal jurisdiction, and cautious of overstepping its bounds as a federal court, the Court believes that in this narrow

12

instance the proposed intervenors have not shown a substantial legal interest sufficient to intervene as of right. While recognizing that generally standing is not required, and that perhaps something less than full Article III standing is required even in this instance involving intervening taxpayers, the Court is concerned that the "interest" the proposed intervenors advance is "of a general character, not particular to certain persons," but potentially shared by all Kentucky taxpayers. *Winn*, 563 U.S. at 1444. Because proposed intervenors have not shown how allowing them to intervene would not also open the doors for all interested taxpayers to do likewise, this is too general of an interest to allow intervention on the basis that the parties are concerned taxpayers.[2]

3

Because the interest advanced by the proposed intervenors is rooted in their status as Kentucky taxpayers and is directly related to the Kentucky Constitution, it also is somewhat intertwined with the remaining two factors the Court must consider, particularly the third factor, to which the Court will turn next. As the third factor, the Court must consider whether "the disposition of the action may impair or impede the proposed intervenors' ability to protect their legal interest." *Jansen,* 904 F.2d at 340. To meet their burden, proposed intervenors "must show only that impairment of [their] substantial legal interest is possible if intervention is denied," and that such "burden is minimal." *Grutter*, 188 F.3d at 399. Proposed intervenors "need not show that substantial impairment of their interest will result, nor from the language of Rule 24(a), that

---

[2]    Additionally, the Court notes that if the proposed intervenors were allowed to intervene and were left as the only remaining parties in the case, they would lack standing to appeal. *Jackson v. Sok*, 65 F. App'x 46, 48 (6th Cir. 2003) ("Permission to intervene in a district court action does not confer standing on appeal," and an intervenor could only appeal "in the absence of the party on whose side intervention was permitted upon a showing . . . that [it] fulfills the requirements of Article III.") (internal quotation marks and citations to Supreme Court precedent omitted).

impairment will inevitably ensue from an unfavorable disposition." *Purnell*, 925 F.2d at 948 (citing Fed. R. Civ. P. 24(a)).

Proposed intervenors argue that if the Court held that the federal Constitution requires the Commonwealth to fund the Ark Park, the "Intervenors' ability to enforce section 5 of the Kentucky Constitution to prevent that financing" would be impaired. [R. 19-1 at 14.] Additionally, even if the Commonwealth were victorious, the proposed intervenors contend their interest in recovering any monies given from the state to Ark Encounter would be impaired since any future state court lawsuit would likely be against the Commonwealth, not Ark Encounter. [R. 19-1 at 15.] However, putative intervenors are correct that Kentucky courts have held that Kentucky taxpayers have "an absolute right… to question the legality of a contract which would allegedly require [government] officials to administer the tax laws in an unconstitutional manner. *City of Louisville v. Fiscal Court of Jefferson Cnty.*, 623 S.W.2d 219, 222 (Ky. 1981) (citing *Kelley v. City of Ashland, Ky.*, 562 S.W.2d 312 (1978); *Russman v. Luckett,* Ky., 391 S.W.2d 694 (1965)); *see also Fiscal Court of Jefferson Cnty. v. Brady*, 885 S.W.2d 681, 682 (Ky. 1994) (suit brought by taxpayers to enforce Section 5 of the Kentucky Constitution); *Rawlings v. Butler*, 290 S.W.2d 801, 802 (Ky. 1956) (same); *Williams v. Bd. of Trs. of Stanton Common Sch. Dist.*, 191 S.W. 507 (Ky. 1917) (same). Because of this right afforded under Kentucky law, the Court believes the proposed intervenors have an alternate recourse to protect their asserted legal interest apart from intervention in the present suit. If this right is as protected and absolute as proposed intervenors claim, and which the Court does not dispute, then the disposition of the present action will not impede their ability to protect that right in the future. *See Jansen,* 904 F.2d at 340. Moreover, this interest is set forth and protected by Kentucky law, and the Kentucky courts are likely the better forum in which to litigate their stated interest.

14

However, "[b]efore one seeks to strike down a state statute he must show that the alleged unconstitutional feature injures him." *Second Street Properties, Inc. v. Fiscal Court of Jefferson Cnty*, 445 S.W.2d 709, 716 (Ky. 1969); *see also Merrick v. Smith*, 347 S.W.2d 537, 538 (Ky. 1961) ("It is an elementary principle that constitutionality of a law or its application is not open to challenge by a person or persons whose rights are not injured or jeopardized thereby."). The proposed intervenors here have not established such direct personal injury, and to some extent the Court would need to reach the merits of the case in order to determine if that injury exists. Moreover, because the intervenors would need to establish such injury under Kentucky law to challenge the alleged constitutional violation at issue, the Court is concerned about the propriety of allowing any Kentucky taxpayer who has difficulty establishing sufficient injury to bring a suit in state court to bypass that process by simply intervening in a federal lawsuit concerning similar subject matter. To do so would potentially flood the federal courts with intervenors who cannot meet the standing requirements for bringing suit in state court.

4

Finally, the Court must ask whether the Defendants may "adequately protect the proposed intervenors' interest." *Jansen,* 904 F.2d at 340. Although the proposed intervenors bear the burden of establishing that the existing parties may not adequately protect their interests, they are "not required to show that the representation will in fact be inadequate," but that there is a potential for inadequate representation. *Miller*, 103 F.3d at 1247; *Linton v. Comm'r of Health & Env't*., 973 F.2d 1311, 1319 (6th Cir. 1992). However, "[a]n applicant for intervention fails to meet his burden of demonstrating inadequate representation when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its

fulfillment of his duty." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citations omitted); *see also Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854 (6th Cir. 2000) (citing *Bradley*, 828 F.2d at 1192).

The proposed intervenors provide two reasons why they believe the Commonwealth cannot adequately represent their interests.  First, the proposed intervenors are prepared to "argue that the Commonwealth's approval of Ark Encounter's original application for tax subsidies was itself unconstitutional," and suggest that the Commonwealth is unlikely to make this argument since it would amount to an admission of error.  [R. 19-1 at 17.]  This argument rests on a flawed premise; whether or not the Commonwealth's original approval of Ark Encounter's application for tax subsidies was in error is not relevant to this dispute.  While it might provide some context, all that now matters is whether the Commonwealth violated the Plaintiff's constitutional rights when it ultimately refused to permit Ark Encounter to proceed in seeking the subsidies.  Second, the proposed intervenors also suggest that the Commonwealth is burdened by "unique institutional constraints that may influence their defense, lest a decisive victory expose them to lawsuits in the future by those seeking to enforce the separation of church and state against the Commonwealth."  [R. 19-1 at 18.]  In support of this argument they direct the Court to two cases in which the State has been sued for allegedly supporting religious organizations.[3]  The proposed intervenors suggest that the Commonwealth's zealous defense of this suit could potentially subject it to future liability, whereas proposed intervenors are not so inhibited.  This argument is speculative at best.  Even if the Commonwealth were likely to be subject to future liability as a

---

[3]     Those cases are: *Pedreira v. Sunrise Children's Servs., Inc.*, No. 3-CV-210-S, 2014 WL 2946417 (W.D. Ky. June 30, 2014) (ongoing Establishment Clause lawsuit where Plaintiffs are challenging Commonwealth's financial support of religious childcare organization) and *Univ. of Cumberlands v. Pennybacker*, 308 S.W.3d 668 (Ky. 2010) (Kentucky sued under Section 5 and other provisions of the Kentucky Constitution for granting financial support to religious college).

16

result of its position in this suit, it does not necessarily follow that the Defendants do not "adequately protect the proposed intervenors' interest."

In short, although the proposed intervenors may have a different perspective as taxpayers, and could potentially present similar arguments in a different light, "[a] mere disagreement over litigation strategy. . . does not, in and of itself, establish inadequacy of representation." *Bradley*, 828 F.2d at 1192. Like proposed intervenors, the Commonwealth is also seeking to enforce Section 5 of the Kentucky Constitution, and as the Commonwealth, it is actually obligated to uphold the Kentucky Constitution and is well-positioned to advocate on behalf of Kentucky residents and taxpayers. "[W]hile the respective interests do not need to be 'wholly' adverse in order to support intervention, they must at least be different." *Reliastar Life Ins. Co. v. MKP Investments*, 565 F. App'x 369, 374 (6th Cir. 2014) (citing *Purnell*, 925, F.2d at 950). The proposed intervenors have not identified how the Commonwealth's interest in upholding the Kentucky Constitution differs from theirs such that the Commonwealth cannot represent their interests in the constitutional use of Kentucky residents' tax dollars, nor have they shown any collusion between the Commonwealth and Ark Encounter, or that the Commonwealth's interests here are adverse to them, or that the Commonwealth has thus far failed in its duty. *See id*.; *Bradley*, 828 F.2d at 1192. Under this fourth factor, the minimal burden on the intervenors still requires "overcome[ing] the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit . . . have the same ultimate objective." *Bradley*, 828 F.2d at 1192 (citation omitted); *United Financial Cas. Inc. Co. v. Wells*, 2012 WL 6004150, *2 (E.D. Ky. Nov. 30, 2012).

As the intervenors have failed to demonstrate all four of the required criteria laid out in *Jansen,* 904 F.2d at 340, intervention as of right under Rule 24(a) is not appropriate. *See Blount-*

*Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) ("Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule.") (citing *Grubbs*, 870 F.2d at 345).

**B**

The Court must also consider whether permissive intervention would be appropriate pursuant to Rule 24(b), which provides that "the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1). Once the proposed intervenor establishes these two requirements, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Miller*, 103 F.3d at 1248). Allowing permissive intervention is within the sound discretion of the trial judge. *Purnell*, 925 F.2d at 951.

As noted above, the motion to intervene is timely. However, the Court's concerns mentioned above regarding the consequences of setting precedent that would allow any Kentucky taxpayer to intervene in this case is of even greater relevance when analyzing whether intervention is appropriate under Rule 24(b). As explained previously, allowing intervention under these circumstances would allow all Kentucky taxpayers to intervene if so desired, and intervenors have not shown how their situation or interest differs from that of all Kentucky resident taxpayers. Accordingly, the potential strains on judicial economy and the inevitable delays, confusion, and prejudice to the existing parties that would result from unrestricted intervention by any number of taxpayers weigh against allowing permissive intervention in this situation. Additionally, the Court believes that its prudential concerns regarding the limits on the

18

federal judiciary and the separation of powers outlined above are also "relevant factors" to be considered under Rule 24(b) as well, s*ee Michigan*, 424 F.3d at 445, and, cautious of overstepping its bounds as a federal court, the Court concludes that in this narrow instance permissive intervention should not be permitted.

Moreover, as the Court is satisfied that the Commonwealth adequately represents the putative intervenors' interests, intervention under Rule 24(b) is similarly denied.  While proposed intervenors' perspective is different from that of the Commonwealth, they have not demonstrated their contribution to the litigation will add unique value such that intervention is necessary.  Although proposed intervenors assert they will more "zealously advance" the argument concerning violation of separation of church and state [R. 19-1 at 21], they do not identify how they would actually present different arguments that would contribute to the litigation in a way that would require intervention.  Allowing them to intervene when their interests and goals are so similar to that of the Commonwealth's would likely result in duplication of the Defendants' efforts, thus resulting in undue delay.  Coupled with the undue delay and prejudice that would result from multiple other Kentucky taxpayers with similar interests all seeking to intervene for the same reasons and under the same standard, the Court finds that allowing intervention in this case would not serve the interests of judicial economy. *See Horrigan v. Thompson*, 229 F.3d 1152 (Table), 2000 WL 1234346, *9 (6th Cir. 2000) ("this court observed that in addition to the four factors derived from [Rule 24(a)(2)] itself, judicial economy is a relevant consideration in deciding a motion for . . . intervention.") (citation omitted) (alteration in original).  Accordingly, permissive intervention is denied as well.

Nevertheless, to the extent that proposed intervenors do have a slightly different perspective from the Commonwealth, the Court will permit the putative intervenors, through

counsel, to file a memorandum *amicus curiae* in support of their position. *See Northland Family Planning*, 487 F.3d at 346 (affirming denial of permissive intervention where district court "addressed the relevant criteria required by Rule 24(b)" and allowed proposed intervenor to file an amicus brief).[4]  While no rule governs the issue at the district court level, it is generally accepted as being within the district court's discretion to permit the filing of an amicus brief. *United States v. State of Michigan*, 940 F.2d 143, 165 (6th Cir. 1991).  Allowing the proposed intervenors the opportunity to participate in the remaining proceedings as *amici curiae* will allow them to present their perspective and adequately address their concerns.  *See Blount-Hill*, 636 F.3d at 287-88 (affirming denial of motion to intervene but finding that proposed intervenors "are not without a voice" because the district court permitted them to appear as *amici curiae*); *Stupak-Thrall*, 226 F.3d at 474 (finding that participation through filing briefs as *amici curiae* sufficiently allowed appellants to make known their concerns and noting "that the concerns of an entity seeking intervention can be presented with complete sufficiency through such participation"); *Bradley*, 828 F.2d at 1194 (affirming denial of motions to intervene, in part because "the district court has already taken steps to protect the proposed intervenors' interests by inviting [their counsel] to appear as *amicus curiae* in the case").

## III

**ACCORDINGLY**, and the Court being sufficiently advised, it is **HEREBY ORDERED** as follows:

---

[4]     Proposed intervenors argue that the greater experience of their counsel on matters concerning the Establishment Clause "makes them especially well-suited to address the legal significance of specific aspects" of this case and will allow them to ensure that all relevant material is presented and make the briefs more meaningful. [R. 19-1 at 21-22.]  While the Court is not persuaded that such assertions outweigh the concerns outlined above, to the extent that such assertions are true, proposed intervenors can still accomplish these goals by participation as amicus curiae, and the Court will welcome their counsel's perspective and experience via that role.  Indeed, as the putative intervenors themselves point out [R. 19-1 at 19], the Sixth Circuit previously has allowed their counsel to present oral argument as *amicus curiae* on similar issues as those involved here.  *See Bowman v. United States*, 304 F. App'x 371, 379-81 (6th Cir. 2008).

1.  The proposed intervenors' motion to intervene [**R. 19**] is **DENIED.**

2.  Should, however, the putative intervenors wish to file a memorandum stating their position, their counsel is invited to brief the case as *amicus curiae*.  If the putative intervenors wish to participate in this way, their counsel should file a motion seeking leave to file such a memorandum, attaching the *amicus* brief as an exhibit, **within twenty-one (21) days** of the entry of this Order.

3.  The Request for Clarification concerning the July 1, 2015 hearing [**R. 47**] is **DENIED AS MOOT**.

This the 30th day of October, 2015.

Gregory F. Van Tatenhove
United States District Judge